UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA and AMERICAN HOME ASSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>DONALDSON COMPANY, INC. and FEDERAL INSURANCE COMPANY,<br><br>Defendants. | Civil No.  10-4948 (JRT/AJB)<br><br>**MEMORANDUM OPINION AND ORDER REVERSING ORDER OF THE MAGISTRATE JUDGE** |

Kelly L. Stoltz, **BATES CAREY NICOLAIDES LLP**, 191 North Wacker Drive, Suite 2400, Chicago, IL  60606, for plaintiffs.

Margaret S. Brownell, **MASLON EDELMAN BORMAN & BRAND, LLP**, 90 South Seventh Street, Suite 3300, Minneapolis, MN  55402, and Rikke A. Dierssen-Morice, **FAEGRE BAKER DANIELS LLP**, 90 South Seventh Street, Suite 2200, Minneapolis MN   55402, for defendant Donaldson Company, Inc.

Plaintiffs National Union Fire Insurance Company of Pittsburgh, PA ("National Union") and American Home Assurance Company ("American Home") bring this action against their insured, Defendant Donaldson Company, Inc. ("Donaldson"), and Donaldson's excess insurer, Defendant Federal Insurance Company ("Federal"). Plaintiffs seek to recover from Defendants amounts that they contributed to a settlement on behalf of Donaldson.  On February 7, 2013, Magistrate Judge Arthur J. Boylan issued an order granting Donaldson's motion to compel the production of documents by

Plaintiffs. (Docket No. 160.)[1] Plaintiffs objected to this order. (Docket No. 173.) Because Donaldson has failed to make a threshold showing of relevance for the documents it seeks, the Court will reverse the Magistrate Judge's order.

## BACKGROUND

The background for this action is described in detail in the Court's order dated March 30, 2012. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Donaldson Co.*, No. 10-4948, 2012 WL 1072329, at *1-6 (D. Minn. Mar. 30, 2012). The Court will not repeat that history here. In essence, this case is a dispute regarding the scope of coverage that Plaintiffs must provide to Donaldson for property damage.

The Magistrate Judge ordered the production of underwriting files related to three insurance policies held by Donaldson: the National Union umbrella policy for the 2001-2002 policy period and the American Home primary liability policy for the 2000-2001 and 2001-2002 policy periods. It appears that the National Union umbrella policy for the 2001-2002 policy period lacks a "Batch Clause Endorsement," an endorsement which Donaldson claims it expected to be included in the umbrella policy. This discovery dispute revolves around whether Donaldson can obtain Plaintiffs' underwriting files to show that the parties – or at least Donaldson – intended a Batch Clause Endorsement to be included in the National Union umbrella policy for the 2001-2002 policy period.

---

[1] The order did not outline the Magistrate Judge's reasons for his decision, other than stating that the "files at issue in this motion are relevant to the subject matter involved in the action and the discovery further appears reasonably calculated to lead to discovery of admissible evidence." (*See* Docket No. 160.)

# ANALYSIS

## I. STANDARD OF REVIEW

The standard of review applicable to an appeal of a Magistrate Judge's order on nondispositive pretrial matters is extremely deferential. *Roble v. Celestica Corp.*, 627 F. Supp. 2d 1008, 1014 (D. Minn. 2007). This Court will reverse such an order only if it is clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Minn. LR 72.2(a).

## II. DISCOVERABILITY OF UNDERWRITING FILES

The Federal Rules of Civil Procedure allow for discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Information sought in discovery need not be admissible at trial, so long as it "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Courts must interpret rules governing discovery broadly and liberally. *See Credit Lyonnais, S.A. v. SGC Int'l, Inc.*, 160 F.3d 428, 430 (8th Cir. 1998). Information is generally discoverable "unless it is clear that the information sought has no bearing upon the subject matter of the action." *See Sinco, Inc. v. B & O Mfg., Inc.*, Civ. No. 03-5277, 2005 WL 1432202, at *1 (D. Minn. May 23, 2005). "The proponent of discovery must make a threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required." *Met-Pro Corp. v. Indus. Air Tech., Corp.*,

No. 8:07CV262, 2009 WL 553017, at *3 (D. Neb. Mar. 4, 2009) (citing *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)).[2]

The parties dispute the relevance of the underwriting files to this action. Plaintiffs argue that the files are not relevant because the terms of the National Union umbrella policy for the 2001-2002 policy period are unambiguous. When interpreting insurance contracts, the Court's objective is to "ascertain and give effect to the intentions of the parties as reflected in the terms of the insuring contract." *Jenoff, Inc. v. N.H. Ins. Co.*, 558 N.W.2d 260, 262 (Minn. 1997). "The plain and ordinary meaning of the contract language controls, unless the language is ambiguous." *Bus. Bank v. Hanson*, 769 N.W.2d 285, 288 (Minn. 2009). A contract is ambiguous if its language "is susceptible to two or more reasonable interpretations." *Carlson v. Allstate Ins. Co.*, 749 N.W.2d 41, 45 (Minn. 2008). "Extrinsic evidence of the parties' subjective intent cannot be used to create contractual ambiguity where none exists on the face of the policy." *In re SRC Holding Corp.*, 545 F.3d 661, 666 (8th Cir. 2008) (citing *In re Hennepin Cnty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 498 (Minn. 1995)).

Donaldson does not argue that the National Union umbrella policy for the 2001-2002 policy period is ambiguous and that the parties' intent is therefore relevant.[3]

---

[2] *See also Carter v. The Advisory Grp., Inc.*, No. 8:06CV603, 2007 WL 3112453, at *2-3 (D. Neb. Oct. 22, 2007) ("If the relevancy of the discovery request is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request."); *Giebink v. Giebink*, Civ. No. 08-4184, 2009 WL 1350805, at *4 (D.S.D. May 12, 2009).

[3] Donaldson states that there are questions about "ambiguity in the umbrella policy, including whether the coverage provided was, under the circumstances, illusory[.]" (Mem. in

(Footnote continued on next page.)

Instead, Donaldson argues that the underwriting files could be relevant to determining whether the National Union umbrella policy for the 2001-2002 policy period provided illusory coverage. Specifically, Donaldson argues that the policy might be illusory because it does not include a Batch Clause Endorsement.

"The doctrine of illusory coverage qualifies the general rule that insurance contracts will be enforced in accordance with their plain language." *Id.* at 671. "The doctrine is best applied where part of the premium is specifically allocated to a particular type or period of coverage and that coverage turns out to be functionally nonexistent." *Id.* (internal quotation marks and alterations omitted). "The fact that an insured's circumstance is outside a policy's realm of coverage does not, without more, render the policy illusory." *BancInsure, Inc. v. Marshall Bank, N.A.*, 453 F.3d 1073, 1076 (8th Cir. 2006); *see also Johnson v. Cummiskey*, 765 N.W.2d 652, 662 (Minn. Ct. App. 2009).

Because Donaldson has not articulated any reason why the lack of a Batch Clause Endorsement might render the policy illusory, the Court finds illusory coverage to be an inadequate basis upon which to order disclosure of the underwriting files. For example, Donaldson has not identified any premium arguably paid for a Batch Clause Endorsement[4] or argued that the umbrella policy failed to provide any coverage, nor has

_____

(Footnote continued.)

Support at 5, Jan. 18, 2013, Docket No. 146.) Donaldson has identified no potential ambiguity in the umbrella policy, however, beyond its argument about illusory coverage, which the Court will address below.

[4] Donaldson has also not argued that the underwriting documents are relevant to determining the premiums that it paid for particular types of coverage.

Donaldson explained how the underwriting files would be relevant to a claim of illusory coverage. The Court thus finds that Donaldson has not shown at this stage that the underwriting files are relevant to determining whether the National Union umbrella policy for the 2001-2002 policy period might provide illusory coverage.[5]

Donaldson also argues:

> [B]ecause the 2001-2002 American Home primary layer of coverage was exhausted on March 19, 2010 with the payment of a $150,000 initial payment to Burroughs, a payment that entered into the National Union 2001-2002 umbrella policy layer by $12,590, the . . . Plaintiffs cannot reasonably assert that although payments were triggered under the prima and umbrella policies, the corresponding underwriting files have no bearing on the coverage dispute.

(Mem. in Support at 10, Jan. 18, 2013, Docket No. 146; *see also* Resp. to Objections at 4, Mar. 7, 3013, Docket No. 190.) Donaldson has not explained, however, why the fact that "a payment [was] entered into the National Union 2001-2002 umbrella policy layer" alters the relevant insurance contracts or would affect the Court's interpretation of any contractual provisions. Because Donaldson has failed to point to any ambiguities in the insurance policies relevant to the Court's decision on this motion, the Court finds no justification for ordering discovery of the underwriting files.

Donaldson further argues, without explanation, that the underwriting files are relevant to its counterclaim for the breach of the covenant of good faith and fair dealing.

---

[5] Donaldson has not argued that there was unequal bargaining power among the parties or that the umbrella policy violated the doctrine of reasonable expectations. *See St. Paul Fire & Marine Ins. Co. v. Fed. Deposit Ins. Corp.*, 968 F.2d 695, 702-03 (8th Cir. 1992). Donaldson has also pointed to no case law in this jurisdiction suggesting that an excess insurer is always under the obligation to specifically alert an insured that an umbrella policy offers a narrower scope of coverage than a primary policy.

(Countercl. ¶¶ 163-70, Aug. 30, 2011, Docket No. 84.)  This counterclaim alleges that Plaintiffs breached the covenant of good faith and fair dealing by promising in a March 11, 2002, letter to provide coverage to Donaldson for certain types of property damage and then failing to provide this coverage.  (*Id.* ¶¶ 164-68.)  This counterclaim also generally alleges that Plaintiffs breached the duty of good faith and fair dealing by its failure to properly separate claims handling responsibilities from individuals also involved in asserting Plaintiffs' coverage positions.  (*Id.* ¶ 169.)  Donaldson has not identified how the underwriting files for the policies at issue are relevant to this counterclaim, which focuses on a 2002 claims handling letter and Plaintiffs' subsequent conduct.  Because Donaldson has not shown the relevance of the underwriting files to this counterclaim, the counterclaim cannot serve as grounds for ordering discovery of the underwriting files.

This Court's order should not be interpreted to hold that the National Union umbrella policy for the 2001-2002 policy period is unambiguous or that Donaldson is unable to challenge the plain terms of the policy as illusory or otherwise unenforceable. However, Donaldson has failed at this stage to make the threshold showing of relevance necessary for the production of the underwriting files.  *See Met-Pro Corp.*, 2009 WL 553017, at *3.  Accordingly, the Court will reverse the order of the Magistrate Judge.

# ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **SUSTAINS** Plaintiffs' objections [Docket No. 173] and **REVERSES** the Order of

the Magistrate Judge dated February 7, 2013 [Docket No. 160]. **IT IS HEREBY ORDERED** that Defendant Donaldson's Motion to Compel Production of Documents by Plaintiffs [Docket No. 142] is **DENIED**.

DATED: May 6, 2013                         ____s/ John R. Tunheim____
at Minneapolis, Minnesota.                 JOHN R. TUNHEIM
                                                      United States District Judge