## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA and AMERICAN HOME ASSURANCE COMPANY,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>DONALDSON COMPANY, INC. and FEDERAL INSURANCE COMPANY,<br><br>　　　　　　　　　　　Defendants. | Civil No.  10-4948 (JRT/JJG)<br><br><br>**MEMORANDUM OPINION AND ORDER AFFIRMING ORDERS OF THE MAGISTRATE JUDGE** |

Cody S. Moon and Kelly L. Stoltz, **NICOLAIDES FINK THROPE MICHAELIDES SULLIVAN LLP**, 71 South Wacker Drive, Suite 4400, Chicago, IL  60606, for plaintiffs.

Margaret S. Brownell, **MASLON EDELMAN BORMAN & BRAND, LLP**, 90 South Seventh Street, Suite 3300, Minneapolis, MN  55402; and Rikke A. Dierssen-Morice, **FAEGRE BAKER DANIELS LLP**, 90 South Seventh Street, Suite 2200, Minneapolis MN  55402, for defendant Donaldson Company, Inc.

Beth A. Jenson Prouty and William A. LeMire, **ARTHUR, CHAPMAN, KETTERING, SMETAK & PIKALA, PA**, 81 South Ninth Street, Suite 500, Minneapolis, MN 55402, for defendant Federal Insurance Company.


Plaintiffs National Union Fire Insurance Company of Pittsburgh, PA ("National Union") and American Home Assurance Company ("American Home") (collectively, "Plaintiffs") bring this action against their insured, Defendant Donaldson Company, Inc. ("Donaldson"), and Donaldson's excess insurer, Defendant Federal Insurance Company ("Federal").  Plaintiffs seek to recover from Donaldson and Federal amounts that they

contributed to a settlement on behalf of Donaldson. The parties have engaged in extensive discovery and before the Court are objections to three nondispositive discovery orders. Because the conclusions in those orders are neither clearly erroneous nor contrary to law, the Court will overrule the objections to all three orders.

## BACKGROUND

### I.    THIS ACTION

The background for this action is described in detail in the Court's previous order, *see Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Donaldson Co.*, Civ. No. 10-4948, 2012 WL 1072329, at *1-6 (D. Minn. Mar. 30, 2012), and the Court will not repeat that history here. The dispute in this case involves the scope of coverage that Plaintiffs must provide to Donaldson to cover Donaldson's liability in two underlying lawsuits arising out of defects in air-intake ducts for trucks manufactured by Donaldson. Donaldson held three insurance policies with Plaintiffs which are the subject of this dispute: an umbrella policy with National Union for 2001 to 2002 and primary liability policies with American Home from 2000 to 2001 and 2001 to 2002. Donaldson retained independent defense counsel to represent it in the underlying litigation, which it selected off a list of approved counsel provided by Plaintiffs, (Decl. of Martin R. Kohne ¶ 10, May 2, 2011, Docket No. 18), and through that counsel ultimately reached a settlement agreement in both underlying suits, *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 2012 WL 1072329 at *2.

Plaintiffs brought this declaratory judgment action seeking a declaration that, among other things, Donaldson and Federal must reimburse Plaintiffs for amounts that

Plaintiffs paid as part of the settlement that were within Donaldson's deductible of $500,000.  (Am. Compl. ¶¶ 54, 61, 67, June 28, 2011, Docket No. 45.)  Plaintiffs sought to apply a separate deductible to each plaintiff's claim in the underlying lawsuits, rather than a single deductible to the entire set of claims.  Whether the deductible would apply to each individual claim or the entire set of claims depended on the parties' interpretation of the relevant policies, particularly whether a "batch clause" applied, which would cause all of the claims to be treated as one occurrence.  Relevant to this Order, Donaldson brought counterclaims against Plaintiffs alleging, among other things, that Plaintiffs breached the covenant of good faith and fair dealing because,

> [f]or eight years . . . [Plaintiffs] defended Donaldson promising that all damages arising from the property damage caused by the allegedly faulty air-intake duct . . . as claimed in the *Arender* Complaint and the *Burroughs* Cross-Claim, [would be treated] as one occurrence under the 2001-2002 Policy and the National Union Umbrella Policy, and apply a single $500,000 deductible.
>
> It was not until 2009, just prior to mediation, that [Plaintiffs] notified Donaldson that other policy years may be implicated in the *Burroughs* Cross-Claim, potentially exposing Donaldson to millions of dollars in liability for deductibles.

(Countercl. ¶¶ 164, 166, Aug. 30, 2011, Docket No. 84.)

## II.    INSTANT DISCOVERY MOTIONS

Before the Court are objections to three nondispositive discovery orders.  First, Plaintiffs object to United States Magistrate Judge Arthur J. Boylan's order (Order ("Docket No. 194"), Apr. 29, 2013, Docket No. 194) granting Donaldson's motion to compel Plaintiffs to produce internal underwriting files, loss reserve information, and

communications with reinsurers.  Second, National Union objects to Magistrate Judge Boylan's order (Order, ("Docket No. 195"), Apr. 29, 2013, Docket No. 195) denying its motion to compel Donaldson to produce various documents that Donaldson withheld on the basis of work product and attorney-client privilege and to compel Donaldson to supplement its privilege log.  Third, Federal objects to United States Magistrate Judge Jeanne J. Graham's order (Order ("Docket No. 260"), Dec. 23, 2013, Docket No. 260) denying Federal's motion to compel responses to requests for admission and interrogatories.[1]  As the Court will address in more detail below, the Court will overrule the objections to each of the three orders, concluding that the Magistrate Judges' orders were not clearly erroneous or contrary to law.

## DISCUSSION

## I.    STANDARD OF REVIEW

The standard of review applicable to an appeal of a Magistrate Judge's order on nondispositive pretrial matters is extremely deferential.  *Roble v. Celestica Corp.*, 627 F. Supp. 2d 1008, 1014 (D. Minn. 2007).  This Court will reverse such an order only if it is clearly erroneous or contrary to law.  *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Minn. LR 72.2(a).

"The rules for depositions and discovery 'are to be accorded a broad and liberal treatment.'"  *Credit Lyonnais, S.A. v. SGC Int'l, Inc.*, 160 F.3d 428, 430 (8th Cir. 1998)

---

[1] On November 5, 2013, this case was transferred from Magistrate Judge Boylan to Magistrate Judge Graham due to Judge Boylan's retirement.  (Clerk's Notice of Reassignment, Nov. 5, 2013, Docket No. 230.)

(quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).   Discovery of non-privileged information is permissible if reasonably calculated to lead to the discovery of admissible evidence relevant to the claim or defense of any party. Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*  "Information is generally discoverable unless it is clear that the information sought has no bearing upon the subject matter of the action."  *Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 237 (D. Minn. 2013) (internal quotations omitted).   The proponent of the discovery must make a "threshold showing of relevance" before discovery of material is required in order to limit "fishing expeditions in discovery."  *See Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992).

## II.      DONALDSON'S MOTION TO COMPEL

Donaldson sought an order compelling Plaintiffs to produce documents pursuant to six of Donaldson's requests, which generally seek underwriting, reserve, and reinsurance information.  (*See* Mem. in Supp. of Am. Second Mot. to Compel at 1-4, Feb. 12, 2013, Docket No. 165.)   The Magistrate Judge granted Donaldson's motion, concluding that underwriting, reserve, and reinsurance information is relevant to Plaintiffs' formulation of their position on coverage.  (Docket No. 194 at 2-3.)  Plaintiffs object to the Order, arguing that the information is not relevant to any of Donaldson's counterclaims or defenses and that reserve information is protected work product.  (Pls.' Objections to Docket No. 194 at 6-12, May 10, 2013, Docket No. 197.)  The Court will

address the requests as they pertain to the parties' identified categories of underwriting communications, reserve information, and reinsurance communications.

###### A.  Underwriting Communications

The Court concludes that the Magistrate Judge did not err in ordering Plaintiffs to produce their internal business communications with underwriters regarding Donaldson's claims.  Donaldson's counterclaim alleges that Plaintiffs handled representation of the *Burroughs* action in bad faith by not revealing to Donaldson until 2009 that the claims would not be batched under the umbrella policy, meaning that the $500,000 deductible would apply to each individual claim, rather than to all of the claims collectively. (Countercl. ¶¶ 164-66.)   Documents regarding Plaintiffs' internal assessment of the claims, particularly with regard to whether the claims would be batched, are therefore relevant to this counterclaim because they could indicate that Plaintiffs planned to not apply the batch clause long before revealing that to Donaldson.  Thus, it was not contrary to law or clearly erroneous for the Magistrate Judge to conclude that the underwriting communications are "reasonably calculated to lead to the discovery of admissible evidence," Fed. R. Civ. P. 26(b)(1), and that it is not "clear that the information sought has no bearing upon the subject matter of the action," *see Shukh*, 295 F.R.D. at 237; *cf. Woodruff v. Am. Family Mut. Ins. Co.*, 291 F.R.D. 239, 248 (S.D. Ind. 2013) ("[Claim file] documents relate to American Family's handling of the Hamilton Action, which goes to the very heart of the issue in this case – whether American Family breached any obligations to Key in its handling of the Hamilton Action."); *Underwriters Ins. Co. v.*

*Atlanta Gas Light Co.*, 248 F.R.D. 663, 668 (N.D. Ga. 2008) (deeming claim files relevant to bad faith claim, and concluding that relevance overcame work product burden, because "a claim file is so integral to proving bad faith that an insured can meet the 'substantial need' burden").[2]

## B.    Reserve Information

Plaintiffs similarly argue that their loss reserve information – amounts set aside to cover potential losses for an insured – for Donaldson's claims is not relevant to any of Donaldson's counterclaims or defenses.   In addition to arguing that Donaldson's explanations of relevance are merely conclusory, Plaintiffs also argue that internal reserve information is not relevant because many factors are involved in setting reserves, such that any reserve cannot fairly represent the value of any particular claim.   (Pls.' Objections to Docket No. 194 at 8.)

The Court concludes that the Magistrate Judge did not err in concluding that reserve information is relevant, particularly as evidence of Plaintiffs' estimation of how it

---

[2] This motion is distinct from the motion addressed in the Court's May 6, 2013 Order, *see Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Donaldson Co.*, Civ. No. 10-4948, 2013 WL 1881049 (D. Minn. May 6, 2013) because here Donaldson seeks the production of underwriting communications that might indicate what Plaintiffs knew and when, for the purposes of Donaldson's counterclaim for the breach of the duty of good faith and fair dealing, rather than merely the applicability of the batch clause.  Thus, the Court's prior analysis regarding possible ambiguity in the policy language and Donaldson's illusory coverage claim does not require the Court to conclude that the Magistrate Judge erred in ordering the production of this request. With regard to the present document requests, the Magistrate Judge did not err in concluding that Donaldson adequately met the "threshold showing of relevance" to warrant ordering their production. *See Hofer*, 981 F.2d at 380.

would apply coverage under the policies[3] at any given point in time, which could bear on Donaldson's claim for breach of the duty of good faith and fair dealing.  The Magistrate Judge's conclusion is not contrary to law, but rather consistent with the bulk of the cases to have addressed this issue.  First, the Eighth Circuit has suggested that evidence of case evaluations and estimates are "relevant to the issue of whether [the insurer]'s settlement offers were made in good faith."  *Kirchoff v. Am. Cas. Co., of Reading, Pa.*, 997 F.2d 401, 405 (8th Cir. 1993).  Second, other courts have repeatedly held that reserve estimates are discoverable because they are relevant to a claim that an insurer acted in bad faith. *See, e.g.*, *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 284 F.R.D. 132, 139 (S.D.N.Y. 2012) ("information concerning the reserve information" would support "claims that Max failed to attempt in good faith to effectuate a prompt, fair and equitable settlement of Signal's claims" and might "also reflect Max or Arch Re's own beliefs about coverage and their liability and thus provide some insight into what Max and Arch Re did or did not know about the risks of insuring the dry dock" (internal alterations and quotations omitted)); *Lexington Ins. Co. v. Swanson*, 240 F.R.D. 662, 667-68 (W.D. Wash. 2007) (liability insurer's reserve information was relevant to bad faith claims brought against insurer by insured's assignee and not entitled to work product protection where no attorneys were listed as authors); *Bernstein v. Travelers Ins. Co.*, 447

---

[3] Plaintiffs point to language in Donaldson's memorandum in support of its motion to compel as limiting this request to the 2001-2002 National Union umbrella policy rather than either of the primary coverage policies.  (Pls.' Objections to Docket No. 194 at 7-8.)  Donaldson does not address this point in its response, but the Court interprets the requests for production as stated in the requests – which encompass the primary policies – not as modified by incidental language in an accompanying memorandum.

F. Supp. 2d 1100, 1116 (N.D. Cal. 2006) (loss reserves discoverable and relevant to bad faith claims); *Nicholas v. Bituminous Cas. Corp.*, 235 F.R.D. 325, 331-33 (N.D.W. Va. 2006) ("the Court concludes that Bituminous' reserve information is relevant to whether it acted in bad faith, and is discoverable unless it is protected by the work-product doctrine," concluding that information was protected by work product based on the specific timeline of that case (emphasis omitted)).

In light of this abundant precedent supporting discovery of reserve information in cases involving allegations of bad faith, the Court concludes that it was not clearly erroneous to compel the production of the reserve information.  To the extent that Plaintiffs' reserve information includes considerations not relevant to their assessment of Donaldson's coverage, Donaldson's requests are aimed at relevant evidence for the purposes of discovery, not for the purposes of admissibility at trial, and the Court deems the information sufficiently relevant for discovery purposes.

Plaintiffs briefly argue that any reserve information is barred by the work product doctrine, but make no substantive argument about how this particular set of reserve information was made in anticipation of litigation as opposed to in the ordinary course of business.  (Pls.' Objections to Docket No. 194 at 10); *see also Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987) ("The work product doctrine will not protect [reserve information] documents from discovery unless they were prepared in anticipation of litigation," rather than in the "ordinary course of business or for other nonlitigation purposes" (alteration and internal quotations omitted)).  Whether documents constitute work product is a fact-specific inquiry, *see Simon*, 816 F.2d at 401, so without

any argument or showing by Plaintiffs that the reserve information was made in anticipation of litigation, the Court will not exclude the documents from the realm of discoverable material.

### C.    Communications with Reinsurers

Plaintiffs argue that they should not be compelled to produce communications with their reinsurers because courts generally do not permit discovery of such communications for the purpose of interpreting unambiguous insurance policies.  (*See* Pls.' Objections to Docket No. 194 at 11.)  But Plaintiffs do not address Donaldson's argument that such communications are potentially relevant to its claim for breach of the duty of good faith and fair dealing, as opposed to the applicability of the batch clause. Donaldson argues that communications with reinsurers will likely reveal what Plaintiffs knew and when about their plans for applying coverage under the policies because they "would have had an obligation to disclose known facts" to reinsurers.  (Response to Objection at 12, May 24, 2013, Docket No. 203.)

As with reserve information, several courts have concluded that communications with reinsurers are relevant and discoverable in cases where a party brings claims for bad faith against an insurer.  *See Imperial Trading Co. v. Travelers Prop. Cas. Co. of Am.*, Civ. No. 06-4262, 2009 WL 1247122, at *3 (E.D. La. May 5, 2009) ("[C]ommunications between Travelers and its reinsurers regarding plaintiffs' insurance claims contain information that is relevant to Travelers' good faith to the extent that Travelers explained its reasons for granting or denying portions of plaintiffs' claims or otherwise described or

explained its handling of plaintiffs' claims."); *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 244 F.R.D. 638, 643 (D. Kan. 2007) (permitting discovery of reinsurance agreements in case involving bad faith claims, observing that "courts appear reluctant to permit discovery of communications between cedents and their reinsurers for the purpose of establishing the proper interpretation of an unambiguous insurance policy, but are more willing to permit discovery for other purposes, such as defending against an insurer's effort to rescind a policy; to deny claims for late notice; to reconstruct a lost policy; or as extrinsic evidence of an ambiguous policy provision" (internal alteration and quotations omitted)); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Cont'l Ill. Corp.*, 116 F.R.D. 78, 82 (N.D. Ill. 1987) ("Insurers' pre-issuance communications with reinsurers sharing any of the risk under the Policies may well be relevant to Insurers' claim [for reliance on misrepresentations].").

But courts have also held that reinsurance communications are not discoverable. *See, e.g.*, *Great Lakes Dredge & Dock Co. v. Commercial Union Assur. Co.*, 159 F.R.D. 502, 504 (N.D. Ill. 1995) ("[T]he relevance of 'all documents' relating to reinsurance is too attenuated to be discoverable under the relevant evidence standard of Rule 26."). Given the split of authority on this issue, the Court cannot conclude that it was contrary to law or clearly erroneous for the Magistrate Judge to order production of Plaintiffs' communications with reinsurers, and will defer to the Magistrate Judge's discretion. Furthermore, the Court is persuaded that Plaintiffs' statements to their reinsurers might shed light on what Plaintiffs knew and when with regard to their plans for handling the

*Burroughs* litigation, which is sufficiently relevant to Donaldson's claims for breach of the duty of good faith and fair dealing to be discoverable.

## III.   NATIONAL UNION'S MOTION TO COMPEL

National Union sought to compel Donaldson to produce documents that it believes Donaldson has improperly withheld, including correspondence between Donaldson and its independent defense counsel, Butler, Snow, O'Mara, Stevens, and Cannada ("Butler Snow"), and Donaldson's in-house counsel files relating to defense of the underlying litigation.   (National Union's Mem. in Supp. of Mot. to Compel at 1-4, Feb. 26, 2013, Docket No. 179.)   The Magistrate Judge denied National Union's requests for disclosure of communications between Donaldson and Butler Snow, disclosure of Donaldson's in-house counsel files, and for supplementation of Donaldson's privilege logs, concluding that Donaldson had not waived its privilege with regard to communications with Butler Snow or in-house counsel's files and that the privilege logs were sufficiently detailed. (Docket No. 195 at 2-3.)   National Union objects to each of these conclusions.

### A.   Attorney-Client Privilege

National Union argues that the Butler Snow files are relevant to its defense against Donaldson's counterclaims based on allegations that National Union's conduct resulted in a higher ultimate settlement amount and that Donaldson waived any attorney-client privilege under Mississippi law, which it argues is the applicable law.   The Magistrate Judge concluded that even under Mississippi's waiver law, which is purportedly broader than that of Minnesota, Donaldson did not waive the privilege protecting its

communications with Butler Snow because it did not raise any issues which would render the communications relevant.  (Docket No. 195 at 5.)  The Magistrate Judge reasoned that Donaldson's bad faith claim against National Union is not based upon communications between Donaldson and Butler Snow, but rather between Donaldson and National Union, and that those communications are "presumably available to National Union."  (*Id.* at 6.)  The Magistrate Judge concluded that "[t]he nature and substance of the information and communications on settlement evaluation and strategy that was shared between Donaldson and Butler Snow is simply not pertinent to the issues raised in the counterclaim" such that, assuming that Mississippi attorney-client privilege law applies, Donaldson did not waive that privilege.  (*Id.*)

Under Mississippi law, a client may waive attorney-client privilege if "he voluntarily introduces testimony relating to such communications."  *Jackson Med. Clinic for Women, P.A. v. Moore*, 836 So. 2d 767, 771-73 (Miss. 2003) (internal quotations omitted) (citing *Am. Standard, Inc. v. Bendix Corp.*, 80 F.R.D. 706, 709-10 (W.D. Mo. 1978) ("By voluntarily injecting into a litigated case, a material issue which requires ultimate disclosure by the attorney of the information, ordinarily protected by the privilege, the client makes the information discoverable.").  The Court will assume, for the purposes of this Order, that Mississippi law governs any waiver of attorney-client privilege.

National Union objects to the Magistrate Judge's analysis, arguing that it misapplied the waiver exception under Mississippi law by failing to take into account that Donaldson's communications with Butler Snow are relevant to National Union's

**defenses** to Donaldson's bad faith counterclaims. (National Union's Objections to Docket No. 195 at 7, May 13, 2013, Docket No. 200 (arguing that Butler Snow's "evaluation of Donaldson's liability and defenses, and damage exposure throughout the course of the underlying lawsuits, are the primary means by which Plaintiffs can defend against Donaldson's claims that their conduct drove up the ultimate settlement amount").) Specifically, National Union claims that the correspondence will permit it to show that (1) the settlement motivation was not driven by Plaintiffs' conduct but rather by the relative strength of the lawsuits' actual claims and the weakness of Donaldson's defenses, (2) the ultimate settlement amount was a direct result of Donaldson's litigation strategy (and presumably not Plaintiffs' actions), (3) the ultimate settlement amount was within Butler Snow's evaluations, and (4) the ultimate settlement amount was reasonable.

But National Union does not explain how making any of these showings would serve to defend against Donaldson's counterclaim for bad faith. Donaldson's bad faith counterclaim centers on Plaintiffs' conduct and representations regarding the application of the batch clause and the impact of that on the amount of deductible for which Donaldson would be responsible. In contrast, the showings for which National Union argues it needs this discovery appear to revolve around the ultimate settlement amount, not the portion of that amount to be covered by Donaldson's deductible. Without further explanation or legal argument about how this discovery relates to a legal theory of defense against Donaldson's bad faith counterclaim, the Court will not conclude that the Magistrate Judge's determination that communications between Donaldson and Butler Snow are not relevant or discoverable was either clearly erroneous or contrary to law.

National Union also argues that Donaldson put into issue the level of control it exerted over Butler Snow because Donaldson alleges in its counterclaim that Plaintiffs failed to inform it of "its right to independent counsel, as allegedly required by Mississippi law, upon asserting its reservation of rights" and that the communications are relevant to defend against this allegation because they would indicate that Donaldson controlled the defense strategy and treated Butler Snow as independent counsel. (National Union's Objection to Docket No. 195 at 8-9 (citing Countercl. ¶ 168).)   But National Union makes no argument and provides no legal basis for how Donaldson's allegation makes Donaldson's actual control over Butler Snow a material issue such that it was clear error for the Magistrate Judge to conclude that, even under Mississippi law, Donaldson waived attorney-client privilege.

The decision in *Liberty Mutual Insurance Company v. Tedford*, 644 F. Supp. 2d 753 (N.D. Miss. 2009), cited by National Union, does not alter this analysis.  There, after an insurer represented an insured in a products liability case resulting in millions of dollars in damages, the insurer sought a declaratory judgment against the insured declaring that it had no duty to defend the insured, was not obligated to indemnify the insured, and that the insured owed all damages stemming from the lawsuit and the costs to the insurer of defending the lawsuit.  *Id.* at 756.  The insured brought a counterclaim on the basis of equitable estoppel, arguing that the insurer failed to inform it of a potential conflict of interest between them and failed to notify it of its right to select independent counsel.  *Id.* at 756-57.  The insurer sought to discover communications between the insured and its defense counsel in the underlying litigation, which had been hired by the

insurer, to prove that the insured was aware of its right to select independent counsel and chose to sit on those rights. *Id.* at 759-60. The parties disputed whether knowledge of true facts is required as part of the prima facie showing of equitable estoppel – if so, communications indicating that the insured was aware of its right to select independent counsel would be relevant and any protection of such communications by attorney-client privilege would be waived. *Id.* at 762-63. The court concluded that such knowledge was an element of equitable estoppel and that the insured therefore "placed at the center of this litigation its[] knowledge of those rights." *Id.* at 763.

The court's reasoning in *Tedford* appears to have little bearing on the instant case, which does not involve a counterclaim for equitable estoppel and in which National Union has not shown how any knowledge of Donaldson's, as potentially revealed through its communications with Butler Snow, could negate its counterclaim for breach of the duty of good faith and fair dealing. To the extent that *Tedford* speaks more broadly to the scope of waiver under Mississippi law, the Court concludes that National Union has failed to show how the communications at issue here fall within any waiver when compared to the showing of relevance made by the insurer in *Tedford*. Unlike the insurer's specific argument in *Tedford* about the knowledge element of an equitable estoppel claim, National Union has not presented any element of a breach of a duty of good faith and fair dealing claim nor any legal theory of defense that could be negated by the communications.

Thus, the Court concludes that the Magistrate Judge did not err in concluding that National Union has not shown Donaldson's communications with Butler Snow relate to a

material issue raised by Donaldson.  Because Donaldson's communications do not meet the threshold requirement of relevancy for discovery, the Court need not consider whether Donaldson waived attorney-client privilege with regard to these materials under Mississippi law.

### B.       In-House Counsel Files

National Union objects to the Magistrate Judge's denial of its request to compel Donaldson's in-house counsel Amy Becker's files and communications, particularly notes on investigations of claims made prior to November 14, 2001.  The Magistrate Judge concluded that these "materials have not been made relevant and discoverable as a result of the bad faith counterclaim," and that "there is no waiver of privilege or work product protection that would open the door to such discovery."  (Docket No. 195 at 6.) National Union's objections to these conclusions address only the issues of work product and attorney-client privilege, not the relevance of the requested materials to Donaldson's counterclaims.   Work product and attorney-client privilege certainly limit the scope of discovery, but Federal Rule of Civil Procedure 26(b) imposes a threshold requirement of relevance on all materials sought to be discovered.  Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ."); *see also In re Murphy*, 560 F.2d 326, 335 (8th Cir. 1977) ("[A] litigant can secure access to [work product] documents by establishing the relevance of the requested documents, Fed. R. Civ. P. 26(b)(1), and by satisfying the substantial need and undue hardship requirements of Rule 26(b)(3).").

At no point in its motion to compel or objections to the Magistrate Judge's order has National Union shown how Amy Becker's files, including information she gathered or generated during her investigation of the defective air-intake ducts claims before November 14, 2001 when the underlying lawsuits commenced, are relevant to Donaldson's counterclaims.   Without any argument regarding or objection to the Magistrate Judge's conclusion that the requested materials are not relevant, the Court will not conclude that such determination was clear error.

### C.    Privilege Logs

National Union also objects to the Magistrate Judge's denial of its request to compel Donaldson to supplement its privilege logs.   Under Federal Rule of Civil Procedure 26(b)(5), when a party withholds information on the basis of a claim that the information is privileged or work product, the party must

> describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A)(ii).   The Magistrate Judge concluded that Donaldson's privilege logs are adequate because they provide the "author and/or source of documents, the date, the recipient and persons copied on the document, and the nature of the asserted privilege," and that the "general subject matter is provided and the entries are not mere boilerplate or uninformative data."  (Docket No. 195 at 3.)

National Union objects on the ground that the Magistrate Judge overlooked the deficiencies in the way Donaldson prepared its privilege logs – by allegedly removing the

documents for which it claimed privilege from Donaldson's other documents as kept in the ordinary course of business and "lump[ing] them together without any way to determine where the logged documents were located within Donaldson's records 'as kept in the usual course of business.'" (National Union's Objections to Docket No. 195 at 12-13.)  As a result, National Union argues that it "cannot determine whether the withheld documents were in files maintained by individuals outside of the attorney-client privilege." (*Id.* at 13.)  National Union claims that this violates Federal Rule of Civil Procedure 34(b)(2)(E)(i), which provides that "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request."

Donaldson's privilege log provides the date sent, the document type, the source of the document, to whom communications were sent and copied, a description of the document, and the type of privilege claimed.  (*See, e.g.*, Ex. to Fourth Decl. of Cody S. Moon, Exs. 8-9, Feb. 26, 2013, Docket No. 182.)  Because Donaldson's privilege logs list both the source of the document and to whom the document was sent, National Union should be able to discern from the logs whether a document was shared with an individual outside the attorney-client privilege.   Thus, to the extent that Rule 34(b)(2)(E)(i) applies to documents listed in a privilege log, Donaldson's privilege logs adequately organize the withheld documents.  Furthermore, the Magistrate Judge did not clearly err in concluding generally that the amount of detail and descriptions in the privilege logs are sufficient.  *Cf. Bartholomew v. Avalon Capital Grp., Inc.*, 278 F.R.D. 441, 447 (D. Minn. 2011) (privilege logs were adequate where they included categories

for: "Author/Source, Recipient(s), CC(s), Date, Description, Privilege Asserted, and Beginning of Bates Number of Produced Version," and "whether named individuals are attorneys"); *BreathableBaby, LLC v. Crown Crafts, Inc.*, Civ. No. 12-94, 2013 WL 3350594, at *9 (D. Minn. May 31, 2013) (privilege log was sufficient where it included: "Document ID, Bates Number, Date, Document Type, From, Recipient(s), CC(s), Privilege Claim, and Description."), *report and recommendation adopted*, 2013 WL 3349999 (D. Minn. July 1, 2013).

## IV.   FEDERAL'S REQUESTS FOR ADMISSION

Federal objects to the Magistrate Judge's order denying its motion to compel. This motion centered on amended requests for admission that Federal served on Plaintiffs and Donaldson regarding when Donaldson first became aware of issues with the ducts on fifty-four unique trucks.  (*See* Second Aff. of Lindsay Arthur ¶ 2, Ex. 1, Dec. 6, 2013, Docket No. 250.)[4]  The requests for admission included fifty-four requests for admission that were essentially identical (but for the specifics regarding the truck, dates, and document references) to the following:

> **Request for Admission No. 1**
> Admit that the First Injury Notified to Donaldson with respect to the specific truck identified in Exhibit D by VIN number 951394 (Donnie

---

[4] The requests were amended versions sent after the Magistrate Judge issued an order denying Federal's motion to compel Donaldson and Plaintiffs to respond to the first version of the requests and interrogatories.  (*See* Order, Oct. 1, 2013, Docket No. 229.)  The Magistrate Judge observed that the terms in those requests were vague and that Federal was "inappropriately attempting to compel the responding parties to adopt Federal's position on disputed operative facts and thereby ratify the legal conclusions that Federal attaches to those facts."  (*Id.* at 3-4.) Federal claims that these amended versions cure the vagueness and use the language suggested by the Magistrate Judge in denying its motion to compel.  (Federal's Objections to Docket No. 260 at 7, Jan. 6, 2014, Docket No. 262.)

Arender), was Donaldson's receipt of the Summons and Complaint dated November 14, 2001, specifically Paragraph 24 thereto, attached hereto as Deposition Exhibit 77.

**Interrogatory No. 1**
If your answer to Request for Admission 1 is anything other than an unqualified admission, then answer this Interrogatory.  Please state the actual date that you believe the First Injury Notified to Donaldson was received by Donaldson regarding this specific truck, and identify with specificity all witnesses and all documents on which you rely for your belief that the First Injury Notified to Donaldson for this specific truck was some date other than November 14, 2001.

**Request for Production of Document No.1**
If your answer to Request for Admission 1 is anything other than an unqualified admission, then please produce copies of all documents on which you rely for your belief that the First Injury Notified to Donaldson for this specific truck was some date other than November 14, 2001.

(*Id.*)  Plaintiffs and Donaldson denied each of the requests for admission, but, according to Federal, did not provide specific alternative dates as requested in the alternative interrogatories.  Federal moved to compel, arguing that Plaintiffs and Donaldson had not fairly responded to the requests for admission and asking the Court to deem each of its requests admitted, or to order Plaintiffs and Donaldson to amend their answers to the interrogatories.  (Mem. in Supp. of Mot. to Compel at 2, 9, Nov. 27, 2013, Docket No. 242.)

The Magistrate Judge denied the motion, concluding that Plaintiffs and Donaldson responded to each request "in keeping with the directives of Rule 36" and observing that Federal's "requests reach beyond the purpose of [Rule] 36" by seeking to eliminate genuine disputes of fact by forcing Plaintiffs and Donaldson to ratify Federal's position. (Docket No. 260 at 2.)  Federal objects, arguing that the Magistrate Judge erred in

concluding that Plaintiffs and Donaldson fairly responded to the requests and interrogatories, and asking the Court to conclude that the amended interrogatories are timely and require Plaintiffs and Donaldson to respond to the interrogatories.

The Court concludes that the Magistrate Judge did not clearly err in concluding that Plaintiffs' and Donaldson's responses satisfied Federal Rule of Civil Procedure 36. Rule 36 requires that "[i]f a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it.  A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest."  Fed. R. Civ. P. 36(a)(4).  Both Plaintiffs and Donaldson satisfied this requirement.   Donaldson objected to each request and interrogatory, but in the alternative denied each request and addressed the interrogatory with a thorough explanation that it "first learned that the trucks at issue . . . had suffered damage due to alleged defective design and manufacture . . . in either December 1999 or early January 2000, when it was notified of customer complaints."  (Second Arthur Aff., Ex. 1 at 144-45.)[5]  Each subsequent interrogatory references this same response.  (*See id.*, Ex. 1 at 145-90.)  Federal argues that Donaldson's interrogatory responses are inadequate because they are not specific to each of the fifty-four trucks, but Rule 36 requires only that Donaldson present its position on the matter, which it has done by stating that it believes that it first learned of damage with regard to all of the trucks at issue in either December 1999 or early January 2000.

---

[5] These page citations refer to the CMECF pagination.

National Union's and American Home's responses denied most of the requests and for each request stated that "First Injury Notified to Donaldson with respect to dusted engines was January 4-6, 2000 at the latest, as evidenced by the Dealer Contact Report dated January 4-6, 2000, bates labeled as DLDSN0054323-25 and DLDSN0061835-37." (Second Arthur Aff., Exs. 3-4.)  These responses are also adequate: they deny the request and respond to the substance of the matter.  To the extent that Federal sought more detailed responses involving Plaintiffs' and Donaldson's interpretation of what constitutes notice, such responses are not required at this stage, requests for admission cannot be used to force a party to adopt the legal significance another party attaches to certain facts.  *See Lakehead Pipe Line Co. v. Am. Home Assur. Co.*, 177 F.R.D. 454, 458 (D. Minn. 1997) ("[R]equests for admission are not to be employed as a means to establish facts which are obviously in dispute or to answer questions of law." (internal quotations omitted)).

Thus, the Court concludes that the Magistrate Judge did not clearly err in concluding that Plaintiffs' and Donaldson's responses to Federal's requests for admission and interrogatories satisfied Rule 36 and declining to amend the responses or order Plaintiffs and Donaldson to amend their responses.  Because the Court concludes that the responses were adequate under Rule 36, it need not address Federal's arguments in support of requiring Plaintiffs and Donaldson to amend their responses to the interrogatories.  *See* Fed. R. Civ. P. 36(a)(6) ("On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served.").

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Plaintiffs' objection [Docket No. 197]  is **OVERRULED** and the Order of the Magistrate Judge dated April 29, 2013 [Docket No. 194] is **AFFIRMED**.

2.      Plaintiff National Union's objection [Docket No. 200] is **OVERRULED** and the Order of the Magistrate Judge dated April 29, 2013 [Docket No. 195] is **AFFIRMED**.

3.      Defendant Federal Insurance Company's objection [Docket No. 262] is **OVERRULED** and the Order of the Magistrate Judge dated December 23, 2013 [Docket No. 260] is **AFFIRMED**.

DATED:  June 24, 2014                    ____s/_John H. Tunheim____
at Minneapolis, Minnesota.                    JOHN R. TUNHEIM
                                         United States District Judge