UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and AMERICAN HOME ASSURANCE COMPANY,<br><br>　　　Plaintiffs/Counter Defendants,<br><br>v.<br><br>DONALDSON COMPANY, INC.,<br><br>　　　Defendant/Cross Defendant/Cross Claimant/Counter Claimant,<br><br>v.<br><br>FEDERAL INSURANCE COMPANY,<br><br>　　　Defendant/Cross Claimant/Counter Claimant/Cross Defendant. | Civil No. 10-4948 (JRT/TNL)<br><br><br>**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR ENTRY OF JUDGMENT** |

Cody S. Moon, Kelly L. Stoltz, and Matthew J. Fink, **NICOLAIDES FINK THORPE MICHAELIDES SULLIVAN LLP**, 71 South Wacker Drive, Suite 4400, Chicago, IL  60606, and Patrick D. Reilly, **ERSTAD & RIEMER, PA**, 8009 Thirty-Fourth Avenue South, Suite 200, Minneapolis, MN  55425, for plaintiffs.

David J.F. Gross, Matthew B. Kilby, and Rikke A. Dierssen-Morice, **FAEGRE BAKER DANIELS LLP**, 90 South Seventh Street, Suite 2200, Minneapolis, MN  55402, and Gary J. Haugen, Leora Itman, and Margaret S. Brownell, **MASLON LLP**, 90 South Seventh Street, Suite 3300, Minneapolis, MN 55402, for defendant Donaldson Company, Inc.

Beth A. Jenson Prouty and Sarah E. Bushnell, **ARTHUR, CHAPMAN KETTERING, SMETAK & PIKALA, PA**, 500 Young Quinlan Building, 81 South Ninth Street, Minneapolis, MN  55402, and Daniel J. Cunningham, **TRESSLER LLP**, 233 South Wacker Drive, Suite 2200, Chicago, IL  60606, for defendant Federal Insurance Company.

This is the Court's oldest open civil case. It is a 7-year old insurance dispute stemming from a 17-year old product-liability action in which Plaintiff National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), Plaintiff American Home Assurance Company ("American Home") (collectively, "AIG"), and Defendant Federal Insurance Company ("Federal") paid a $6 million settlement on behalf of Defendant Donaldson Company, Inc. ("Donaldson") in the underlying product-liability action. This litigation has been about that $6 million settlement: who owes who, how much, and why.

Over the last five years, the Court has issued orders resolving all claims. Now, AIG moves for entry of judgment against Federal and Donaldson for amounts they owe to AIG, including pre- and post-judgment interest. Because all claims have been adjudicated, the Court will grant AIG's motion and enter money judgments for AIG against Donaldson and Federal, including pre- and post-judgment interest.

## BACKGROUND[1]

**I.   FACTUAL BACKGROUND**

Throughout the 1990s, Donaldson designed and manufactured plastic air-intake ducts for the air-intake system on trucks used in the logging and construction industries. *Donaldson I*, 2012 WL 1072329, at *1. Starting in 2001, lawsuits began being filed

---

[1] The Court articulated the factual background of this case in detail in its prior Orders. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Donaldson Co.* (*Donaldson I*), No. 10-4948, 2012 WL 1072329 (D. Minn. Mar. 30, 2012); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Donaldson Co.* (*Donaldson II*), No. 10-4948, 2015 WL 1292561 (D. Minn. Mar. 23, 2015); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Donaldson Co.* (*Donaldson III*), No. 10-4948, 2016 WL 4186930 (D. Minn. Aug. 8, 2016); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Donaldson Co.* (*Donaldson IV*), No. 10-4948, 2017 WL 3642120 (D. Minn. Aug. 23, 2017). The Court will recount the relevant facts here, drawing on the description found in those decisions and the materials provided therein.

against Donaldson alleging that its air-intake ducts had walls that were too thin, which purportedly caused the ducts to soften and melt, causing engine failure and engine damage. *Id.* In one such lawsuit in Mississippi state court, *Arender v. Burroughs Diesel, Inc.*, the plaintiff truck-purchasers (Arender and others) asserted claims against Donaldson, and the defendant truck-seller (Burroughs) asserted a cross-claim against Donaldson for damages from the allegedly defective ducts. *Id.* at *2.

AIG insured Donaldson from 1996 to 2002, with six largely identical general commercial-liability insurance policies, effective for consecutive annual periods from July 31, 1996, to July 31, 2002. *Id.* at *2. Each policy contained a $1 million per-occurrence limit and a $500,000 per-occurrence deductible for property damage. *Id.* During the same time, Federal insured Donaldson as Donaldson's excess insurer – providing coverage for losses that exceeded the limits of Donaldson's policies with its primary insurers, including AIG. *Id.* at *3.

Between 2005 and 2008, the Arender claims settled for $214,408.56 in total, distributed among several plaintiffs (the *Arender* settlements). (Joint Stip., May 18, 2015, Docket No. 376.) But the Burroughs cross-claim took longer to settle. A first mediation in October 2009 failed to resolve it. *Donaldson I*, 2012 WL 1072329, at *5. In the lead-up to a second mediation in February 2010, AIG sent Donaldson a letter on January 21, 2010, in which AIG stated that, while Donaldson had satisfied one $500,000 deductible, the Burroughs cross-claim implicated all six of Donaldson's annual policies with AIG. (Decl. of Cody S. Moon ("Moon Decl.") ¶ 20, Ex. 19 at 3-4, Docket No. 462.) The letter further stated that Donaldson "has not satisfied" the unpaid deductibles and

asked Donaldson to be prepared to contribute up to $2.5 million toward the Burroughs settlement "to satisfy Donaldson's deductible obligations." (*Id.*)  On February 9, 2010, AIG emailed Federal, stating that AIG was willing to contribute to the Burroughs settlement "additional sums allocable to" Federal's policies "under a reservation of rights." (Decl. of Cody S. Moon ¶ 7, Ex. E, Oct. 24, 2011, Docket No. 110.)  AIG stated that it "reserve[d] the right[ ] to recoup any settlement payment that is allocable to [Federal]." (*Id.*)

On February 22, 2010, the Burroughs cross-claim settled for $6 million (the *Burroughs* settlement).  *Donaldson I*, 2012 WL 1072329, at *5.  AIG contributed $3,548,387.10 toward the settlement and Federal contributed $2,451,612.90; Donaldson paid nothing.  *Id.*  AIG invoiced Donaldson on June 24, 2010, for $2,483,870.97 in unpaid deductibles for AIG's contribution to the *Burroughs* settlement.  (Decl. of Rikke Dierssen-Morice ¶ 2, Ex. 1, Oct. 5, 2015, Docket No. 395.)  AIG brought this action against Donaldson in December 2010.  (*See* Compl., Dec. 21, 2010, Docket No. 1.)  AIG added Federal as a defendant in June 2011.  (*See* Am. Compl., June 28, 2011, Docket No. 45.)

## II.   PROCEDURAL HISTORY

Over the last seven years, AIG, Donaldson, and Federal have vigorously disputed the proper allocation of the $6 million *Burroughs* settlement among the three of them. First, there was a dispute over how many "lots" of goods the *Burroughs* litigation involved, and thus how many "occurrences" the *Burroughs* settlement implicated.

*Donaldson, I*, 2012 WL 1072329, at *14; *Donaldson II*, 2015 WL 1292561, at *9.  More lots – and thus more occurrences – would mean that Donaldson would owe more $500,000 deductibles.  Second, there was a dispute over how many of Donaldson's policies the *Burroughs* settlement implicated.  *Donaldson II*, 2015 WL 1292561, at *6.  Again, more policies implicated would mean more deductibles owed by Donaldson.  Third, the parties disputed the timing of both when Donaldson received sufficient notice under its policies of the *Burroughs* property damage and when the damage occurred, thereby affecting which annual policy or policies were implicated, which in turn would affect AIG and Federal's obligations.  *Donaldson I*, 2012 WL 1072329, at *13.

Many of the aforementioned disputes have involved the Batch Clause Endorsement in Donaldson's policies with AIG (and thus incorporated into Donaldson's excess policies with Federal), which combines certain property damage that might otherwise be subject to separate deductibles into one "occurrence."  *Id.* at *3.  The Clause states:

> Section V—Definitions [12/13]—Occurrence, is amended to add new paragraph:
>
> As respects 'Products Completed Operations Hazard' all . . . "property damage" arising out of and attributable directly or indirectly to the continuous, repeated or related exposure to substantially the same general conditions affecting one lot of goods or products manufactured, sold, handled or distributed by you or others trading under your name, shall be deemed to result from a single "occurrence."  Such "occurrence" will be deemed to occur with the first injury notified to you during the policy period.

(Compl., Ex. A, Endorsement No. 20 Revised, at 57.)

- 5 -

On March 23, 2015, the Court made the following findings and conclusions. First, the *Burroughs* settlement implicated two "lots" of products, and therefore the damages paid for in the *Burroughs* settlement were caused by two occurrences. *Donaldson II*, 2015 WL 1292561, at *9-12. And second, Donaldson received notice of the underlying property damage during the 1999-2000 policy year. *Id.* at *12.[2]

After the Court's March 23, 2015, Order, while Donaldson's counterclaims remained pending, AIG brought a motion for entry of judgment on the claims that had already been decided. *Donaldson III*, 2016 WL 4186930, at *3. The Court denied AIG's request, holding that, under Federal Rule of Civil Procedure 54, entry of partial judgment was not justified. *Id.* at *3-4. Later, the Court granted AIG summary judgment on Donaldson's counterclaims. *Donaldson IV*, 2017 WL 3642120, at *9. Thus, all claims have been adjudicated and the case is ripe for entry of final judgment.

## DISCUSSION

### I. JUDGMENT AGAINST DONALDSON

AIG seeks a money judgment against Donaldson. AIG and Donaldson agree that, in light of the Court's decisions in this case, National Union is entitled to a $500,000 judgment against Donaldson for one unpaid deductible. The Court will therefore enter a money judgment accordingly.

---

[2] Although the Court did not explicitly state in its March 23, 2015, Order that the *Burroughs* settlement is allocable to the 1999-2000 National Union Policy – and therefore that the 1999-2000 Federal Excess Policy may also be implicated – that conclusion necessarily follows from application of the Batch Clause to the Court's finding that Donaldson received notice of the underlying property damage during the 1999-2000 policy year.

## II.     JUDGMENT AGAINST FEDERAL

AIG seeks a money judgment against Federal also.  AIG claims that the *Burroughs* settlement, together with the *Arender* settlements, exceeded Donaldson's $1 million coverage limit on the 1999-2000 National Union Policy and that the 1999-2000 Federal Excess Policy obligates Federal to pay the excess amount.  Consequently, AIG claims that, because it paid part of Federal's share of the *Burroughs* settlement, it is entitled to reimbursement from Federal.

The 1999-2000 Federal Excess Policy is a typical follow-form excess-insurance policy.  It states that Federal "will pay on behalf of the insured, that part of loss covered by this insurance in excess of the total applicable limits of underlying insurance." (Decl. of Rikke Dierssen-Morice ¶ 2, Ex. A at 9, Dec. 4, 2015, Docket No. 412.)  And it expressly incorporates the terms of the underlying insurance:  here, the 1999-2000 National Union Policy, which includes the Batch Clause Endorsement.  (*See id.* ("The terms and conditions of underlying insurance are . . . made a part of this policy.")) Therefore, because the 1999-2000 National Union Policy's $1 million limit was impaired by $214,408.56 as a result of the *Arender* settlements, National Union is liable for only $785,591.44 of the *Burroughs* settlement – the full remainder of the National Union's $1 million limit.  The $6 million *Burroughs* settlement exceeded this available remainder by $5,214,408.56, thereby triggering Federal's obligations under the 1999-2000 Federal Excess Policy.  AIG contributed $3,548,387.10 toward the *Burroughs* settlement (when obligated to contribute only $785,591.44), and Federal contributed $2,451,612.90 (when

CASE 0:10-cv-04948-JRT-TNL   Doc. 496   Filed 12/06/17   Page 8 of 17

obligated to contribute $5,214,408.56).  Federal must therefore reimburse AIG the difference: $2,762,795.66.

Federal argues that it is not liable for its $5.2 million share of the *Burroughs* settlement because the underlying injuries in the *Burroughs* claim did not all occur during the policy period of the 1999-2000 Federal Excess Policy.  Federal maintains that the 1999-2000 Federal Excess Policy conflicts with the 1999-2000 National Union Policy because the 1999-2000 Federal Excess Policy includes the phrase "provided the injury or offense takes place during the Policy Period of this policy."  (Decl. of Rikke Dierssen-Morice ¶ 2, Ex. A at 9, Dec. 4, 2015, Docket No. 412.)  First, Federal made this argument in its motion for summary judgment, and the Court gave it full consideration before denying the motion.  (*See* Def. Federal's Mem. Supp. Mot. Summ. J. at 28-29, July 1, 2014, Docket No. 289.)  Second, the 1999-2000 National Union Policy contains a nearly-identical provision.  (Am. Compl. ¶ 12, Ex. D at 9, § I.A.1.b., June 28, 2011, Docket No. 45 ("This insurance applies . . . only if: . . . The 'bodily injury' or 'property damage' occurs during the policy period.").)  Nevertheless, the Court found that application of the Batch Clause Endorsement resulted in two occurrences attributable to the 1999-2000 National Union Policy.  *Donaldson II*, 2015 WL 1292561, at *9-12.  Third, the Court rejected a similar argument from Federal with respect to the 1999-2000 National Union Policy's determination for when a "loss of use" stemming from property damage occurs.  *Donaldson I*, 2012 WL 1072329, at *12 n.22 ("Pursuant to the Batch Clause Endorsement, the timing of physical injury to property, for the purposes of coverage, is when Donaldson is notified of that injury.").  To find, as Federal suggests, that the 1999-

- 8 -

2000 Federal Excess Policy requires actual injury to occur during the policy period would contradict the Batch Clause Endorsement by tying coverage to the date of injury rather than the date of notice. "[T]he Batch Clause Endorsement does not state that each **injury itself** must occur during a policy period to be covered under that policy." *Id.* at *12. Federal is therefore liable to National Union for the portion of the *Burroughs* settlement that National Union paid and that is attributable to the 1999-2000 Federal Excess Policy. The Court will enter a money judgment accordingly.

### III. PREJUDGMENT INTEREST

In this diversity action, Minnesota law applies to an award of prejudgment interest. *Matthew v. Unum Life Ins. Co. of Am.*, 639 F.3d 857, 864 (8th Cir. 2011).

#### A. Prejudgment Interest Against Donaldson

AIG and Donaldson dispute both the rate for and the start date from which the Court should award prejudgment interest. The Court's determination of the proper rate will resolve the dispute over the proper start date.

##### 1. Rate

With respect to the rate, AIG and Donaldson dispute whether it should be 6 percent under Minn. Stat. § 334.01, or 10 percent under Minn. Stat. § 549.09. In the past, "Minnesota courts have issued inconsistent decisions on how § 549.09 interacts with § 334.01." *Woods v. K.R. Komarek, Inc.*, No. 15-4155, 2017 WL 2312868, at *6 (D. Minn. May 26, 2017).

In *Seaway Port Authority of Duluth v. Midland Insurance*, the court of appeals held that § 549.09 (the 10-percent statute) "was not intended to disturb the existing law of prejudgment interest, but to provide for prejudgment interest in situations where prejudgment interest was not already allowed by law." 430 N.W.2d 242, 252 (Minn. Ct. App. 1988). The Eighth Circuit has agreed with the reasoning in *Seaway*, "that § 549.09 was not intended to disturb the existing law of prejudgment interest." *Nw. Airlines, Inc. v. Flight Trails*, 3 F.3d 292, 297 (8th Cir. 1993). And recently, the court of appeals has reaffirmed this conclusion. *Hogenson v. Hogenson*, 852 N.W.2d 266, 272-74 (Minn. Ct. App. 2014). Before Minnesota amended § 549.09 in 1984, damages had to be "readily ascertainable" to recover prejudgment interest, and so § 549.09 (the 10-percent statute) applies when damages are **not** readily ascertainable. *Id.* at 273-74.[3]

Here, § 549.09 (the 10-percent statute) applies because damages against Donaldson were not readily ascertainable.[4] AIG and Federal paid a $6 million settlement on Donaldson's behalf, but the parties vigorously disputed the proper allocation of that $6

---

[3] This scheme produces a seemingly counterintuitive result: a plaintiff who would not have been entitled to any prejudgment interest at common law because her damages were not readily ascertainable may recover prejudgment interest at 10 percent on not-readily-ascertainable damages under § 549.09 – but if the damages were readily ascertainable such that she would have been entitled to prejudgment interest, then the lower 6-percent rate applies under § 334.01.

[4] AIG and Donaldson each take the side of this issue contrary to their respective interests. AIG argues that their damages were ascertainable, which would support a finding that it is due interest under § 334.01 (the 6-percent statute). (*See* Pls.' Reply Supp. Mot. at 10-11, Oct. 11, 2017, Docket No. 493.) And Donaldson argues that damages before the Court's summary-judgment order were not readily ascertainable, which would support a finding that it owed interest at the higher, 10-percent rate. (*See* Def. Donaldson's Opp. at 7-13, Sept. 27, 2017, Docket No. 491.)

million among themselves precisely because the proper allocation (and therefore AIG's damages) were not readily ascertainable.

First, there was a dispute over how many "lots" of goods the *Burroughs* litigation involved. Each "lot" corresponds to one "occurrence," and Donaldson's policies required it to pay a $500,000 deductible for each occurrence. At the outset, the parties disputed the meaning of the term "lot" as used in the Batch Clause Endorsement. *Donaldson I*, 2012 WL 1072329, at *14. The Court found that, on the face of the policies, "lot" likely applied to each type of unique product as a distinct group, and that the term "lot" did not include a temporal limitation. *Id.* But further discovery was required for the Court to determine how the term "lot" applied to Donaldson's products. *Id.* After that discovery, the parties still disputed how many lots were involved in the *Burroughs* litigation. AIG initially took the position that the *Burroughs* litigation involved at least three lots of defective products. *Donaldson IV*, 2017 WL 3642120, at *4. AIG later argued for one, Donaldson for one or two, and Federal for no fewer than twenty-two. *Donaldson II*, 2015 WL 1292561, at *9. Ultimately, the Court found that there were two lots of products responsible for the underlying harm in the *Burroughs* litigation. *Id.* at *10.

Second, there was a dispute over how many of Donaldson's policies the *Burroughs* settlement implicated. Donaldson argued that all loss pursuant to the *Burroughs* settlement should be properly allocated to one policy, and thus that it was responsible for only one $500,000 deductible, which it had already paid to AIG. *Id.* at *6. AIG argued that six policies were implicated (one for each of the six annual policies that Donaldson purchased from AIG between 1996 and 2002), and thus that Donaldson

- 11 -

owed AIG for five additional $500,000 deductibles. AIG further argued that the Batch Clause Endorsement did not aggregate damage across multiple policy-years into a single occurrence. *Donaldson IV*, 2017 WL 3642120, at *4, n.10. The Court initially found that the Batch Clause Endorsement could combine injuries across policy years into one "occurrence," but that further discovery was needed to determine whether the Batch Clause Endorsement did so for the *Burroughs* settlement. *Donaldson I*, 2012 WL 1072329, at *12-13. Ultimately, the Court found that the *Burroughs* settlement implicated only one of Donaldson's policies. *See Donaldson II*, 2015 WL 1292561, at *12.

Third, there was a dispute regarding timing. The parties initially disputed when Donaldson received sufficient notice under its policies of the *Burroughs* property damage to trigger policy coverage. *Donaldson I*, 2012 WL 1072329, at *13. Later, AIG and Donaldson agreed on the timing-of-notice issue, but Federal still disputed it. *Donaldson II*, 2015 WL 1292561, at *12. Whether the loss attributed to the *Burroughs* litigation was covered by the 1999-2000 policy or the 2000-2001 policy would significantly change the amounts that AIG and Federal would owe toward the $6 million settlement. *Id.* at *6. Ultimately the Court found that Donaldson received notice during – and that the *Burroughs* settlement was attributable solely to – the 1999-2000 policy. *Id.* at *12.

In light of this extensive litigation over the proper contributions from AIG, Donaldson, and Federal toward the $6 million *Burroughs* settlement, AIG's damages from Donaldson were not readily ascertainable. AIG's recovery from Donaldson depended on several contingencies related to the number of lots and occurrences

involved, the number of policies implicated, and the timing of notice to Donaldson. *See Matthew v. Unum Life Ins. Co. of Am.*, 639 F.3d 857, 865-66 (8th Cir. 2011) (damages not readily ascertainable because of uncertainty about (1) whether insured was "totally disabled," and (2) amount of insured's loss). Because AIG's damages from Donaldson were not readily ascertainable, § 549.09 applies. *Hogenson*, 852 N.W.2d at 273. Therefore, prejudgment interest against Donaldson (and AIG) will be assessed at 10 percent per annum.[5]

### 2. Start Date

With respect to the start date, the Court's conclusion that § 549.09 applies resolves the start-date dispute. Section 549.09 provides that prejudgment interest "shall be computed . . . from the time of the commencement of the action or a demand for arbitration, or the time of a written notice of claim, whichever occurs first." Minn. Stat. § 549.09 subd. 1(b). "The phrase 'written notice of claim' . . . simply means a demand for payment (or other similar assertion) contained in a writing." *Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.*, 845 F. Supp. 2d 975, 978 (D. Minn. 2012), *aff'd*, 703 F.3d 1104 (8th Cir. 2013). A writing that does not demand payment, but rather "invite[s] further discussion and negotiation," is not a written notice of claim. *Grandoe Corp. v. Gander Mountain Co.*, No. 11-0947, 2013 WL 3353927, at *20 (D. Minn. July 3, 2013), *aff'd*, 761 F.3d 876 (8th Cir. 2014).

---

[5] Because the Court finds that § 549.09 applies, the Court need not separate prejudgment interest into preverdict and postverdict interest. *See Hogenson*, 852 N.W.2d at 272, 274.

AIG invoiced Donaldson on June 24, 2010, for $2,483,870.97 in unpaid deductibles that AIG contributed to the *Burroughs* settlement.  (Decl. of Rikke Dierssen-Morice ¶ 2, Ex. 1, Oct. 5, 2015, Docket No. 395.)  That invoice certainly constitutes written notice of AIG's claim against Donaldson for unpaid deductibles.  *See Datalink Corp. v. Perkins Eastman Architects, P.C.*, No. 13-2978, 2015 WL 4208692, at *5 (D. Minn. July 10, 2015).  But AIG argues that they gave Donaldson earlier written notice of their claim:  a January 21, 2010 letter.  The Court agrees.  That letter states that Donaldson "has not satisfied" the unpaid deductibles and asks Donaldson to be prepared to contribute up to $2.5 million toward the *Burroughs* settlement "to satisfy Donaldson's deductible obligations."  (Moon Decl. ¶ 20, Ex. 19 at 4.)  The Court reads this letter as a written demand that Donaldson pay up to $2.5 million in unpaid deductibles, or at least as an "other similar assertion," *Gen. Mills*, 845 F. Supp. 2d at 978.  *See Donaldson IV*, 2017 WL 3642120, at *5.  Therefore, prejudgment interest against Donaldson will be computed from January 21, 2010, until the date of judgment entry.

Donaldson does not dispute that the January 21, 2010 letter constitutes written notice of AIG's claim.  Rather, Donaldson argues that the Court should employ "equitable considerations" and award prejudgment interest starting on March 23, 2015, the date of the Court's summary-judgment order determining that Donaldson was liable to AIG for one unpaid $500,000 deductible.  (Def. Donaldson's Opp. at 7-9, Sept. 27, 2017, Docket No. 491.)  But Donaldson admits that such equitable considerations apply only to prejudgment interest determined under traditional common-law principles.  Here, § 549.09 states that prejudgment interest "**shall** be computed" from the earliest of three

possible events. Minn. Stat. § 549.09 (emphasis added). "The use of the word 'shall' in a statute . . . 'indicates a duty that is mandatory, not one that is optional or discretionary.'" *Dukowitz v. Hannon Sec. Servs.*, 841 N.W.2d 147, 155 (Minn. 2014) (quoting *Sawh v. City of Lino Lakes*, 823 N.W.2d 627, 637-38 (Minn. 2012)). Therefore, the Court may not alter the statutory start date of prejudgment-interest accrual under § 549.09 in light of equitable considerations.

### B.     Prejudgment Interest Against Federal

AIG and Federal do not dispute the rate for prejudgment interest, but only the start date from which it should be awarded. AIG asserts that their email to Federal on February 9, 2010, constituted a "written notice of claim" under § 549.09. Federal maintains that any prejudgment interest can only have begun to accrue on the date that AIG sued Federal: June 28, 2011.

The February 9, 2010 email was not a written notice of claim. In it, AIG stated that it was willing to contribute to the *Burroughs* settlement "additional sums allocable to" Federal's policies "under a reservation of rights." (Decl. of Cody S. Moon ¶ 7, Ex. E, Oct. 24, 2011, Docket No. 110.) AIG further stated that it "reserves the rights to recoup any settlement payment that is allocable to [Federal]." (*Id.*) This reservation of rights is not a written demand for payment. *See Gen. Mills*, 845 F. Supp. 2d at 978. Rather, it "invite[s] further discussion and negotiation." *Grandoe*, 2013 WL 3353927, at *20. The email neither states that Federal owes AIG any money nor provides any reasons why Federal might be liable to AIG. Unlike AIG's letter to Donaldson in which AIG demanded that Donaldson pay up to $2.5 million of the *Burroughs* settlement because of

unpaid deductibles, AIG's email to Federal is simply a clarification that AIG was not giving up any potential claims against Federal. This is consistent with the Court's finding that the February 9, 2010 email reserved AIG's rights sufficient to overcome Federal's equitable defenses to AIG's claims. *Donaldson I*, 2012 WL 1072329, at *7-9. Therefore, prejudgment interest against Federal will be computed from June 28, 2011, the date of AIG's amended complaint, until the date of judgment entry.

## IV.  POST-JUDGMENT INTEREST

In a diversity action, post-judgment interest is awarded pursuant to 28 U.S.C. § 1961. *Weitz Co. v. Mo-Kan Carpet, Inc.*, 723 F.2d 1382, 1385 (8th Cir. 1983). The Court will therefore order post-judgment interest paid pursuant to § 1961.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Award of Interest and Request for Entry of Judgment [Docket No. 485] is **GRANTED**.

**IT IS FURTHER ORDERED** that:

1.  The damages paid for in the *Burroughs* settlement were caused by two occurrences.

2.  Two $500,000 per-occurrence deductibles apply to the *Burroughs* settlement. Because Donaldson previously paid one $500,000 per-occurrence deductible, Donaldson shall reimburse National Union an additional $500,000 per-occurrence deductible.

3. The *Burroughs* settlement is allocable to the 1999-2000 National Union Policy.

4. The 1999-2000 National Union Policy is impaired by $214,408.56. Accordingly, $785,591.44 of the $6,000,000 *Burroughs* settlement is allocated to the 1999-2000 National Union Policy.

5. $5,214,408.56 of the $6,000,000 *Burroughs* settlement is allocated to the 1999-2000 Federal Excess Policy. Because Federal previously paid $2,451,612.90 toward the *Burroughs* settlement, Federal shall reimburse National Union $2,762,795.66.

6. For the $500,000 owed by Donaldson to National Union, prejudgment interest is awarded at the simple rate of 10% per annum from January 21, 2010, to the date of entry of judgment.

7. For the $2,762,795.66 owed by Federal to National Union, prejudgment interest is awarded at the simple rate of 10% per annum from June 28, 2011, to the date of entry of judgment.

8. Post-judgment interest is awarded on any delinquent amounts pursuant to 28 U.S.C. § 1961.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:  December 6, 2017　　　　　　　　_____s/John R. Tunheim_____
at Minneapolis, Minnesota.　　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　　　　　Chief Judge
　　　　　　　　　　　　　　　　　　　　United States District Court